UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff

v.                                Case No. 1:10-cv-404-HJW

TWO HUNDRED TWENTY
THOUSAND TWO HUNDRED
DOLLARS ($220,200.00) IN
UNITED STATES CURRENCY,

    Defendant

## ORDER

In this "in rem" civil forfeiture action, the plaintiff ("United States") has filed a "Motion for Summary Judgment" (doc. no. 46) seeking forfeiture of $220,200.00 in U.S. currency seized during the execution of a search warrant. Claimant Sharon Sweet-Wright ("Sweet-Wright") opposes the motion (doc. no. 49). The United States has filed proposed findings of fact and conclusions of law, which the claimant has highlighted as true, false, or irrelevant (doc. no. 50). The Court heard oral arguments on January 8, 2013. Having considered the record, including the pleadings, briefs, exhibits, proposed findings, oral arguments, and applicable authority, the Court will <u>deny</u> the motion for the following reasons:

**I.  Background**

The relevant facts have been set forth in considerable detail in the proposed findings (doc. no. 50, ¶¶ 1-22). Those facts are incorporated herein and need only be summarized.

In 2009, law enforcement officers with the Warren County Drug Task Force ("WCDTF") and the federal Drug Enforcement Agency ("DEA") were investigating illegal drug-trafficking in Ohio by Phillip Sweet ("Sweet"), who had multiple drug-related convictions. Sweet was associated with two addresses: his residence located at 2102 Deer Meadow Drive, Springfield, Ohio, and his mother's residence at 6071 Golf Club Lane, Hamilton, Ohio. During the investigation, undercover officers and a reliable confidential informant made four controlled purchases of marijuana from Sweet (doc. no. 46 at 5-6). These controlled buys were made at different locations, with the last one occurring at Sweet's Deer Meadow residence. None of the buys occurred at the Golf Club residence. During the investigation, Sweet was observed driving vehicles registered to various relatives at the Golf Club address. Sweet also used the Golf Club address for his drivers license, for registration of several businesses, and gave such address to his probation officer as his "home" address.

On January 4, 2010, officers with the WCDTF and the Drug Abuse Reduction Task Force ("DART") conducted simultaneous searches of Sweet's residence at 2101 Deer Meadow and his mother's residence at 6071 Golf Club.  At the Deer Meadow residence, officers found 3.5 pounds of marijuana concealed in a trash can in the garage, paraphernalia associated with drug-trafficking (including scales, baggies, and firearms), and $152,750.00 in U.S. currency concealed inside a "Rumble Bee" truck in the garage. Officers had observed Sweet driving this truck, which was registered to his mother at the Golf Club address, during the controlled buy on September 17, 2009. Receipts at the Deer

Meadow residence indicated that Sweet, using an alias name, had paid for over $5,000.00 worth of customizing on the "Rumble Bee."

In the simultaneous search of the Golf Club residence pursuant to a search warrant, officers found no drugs, weapons, or other "tools of the drug trade." Officers did find twelve pieces of mail addressed to Phillip Sweet at the Golf Club address, including the notice of suspension of his Ohio driver's license for multiple traffic offenses (doc. no. 46-3 at 8, ¶ 32). Officers also found and seized $220,200.00 in U.S. currency in a safe hidden underneath blankets in a bedroom closet. According to Sweet's younger half-brother, Isaiah Gales ("Gales"), Sweet had bought the safe at Sam's Club and put it in Gale's bedroom closet. Sweet acknowledged that he bought the safe and put it there, but later claimed it belonged to his mother (doc. nos. 46-3 at 5, ¶ 12). At the time of the search, Sharon Sweet-Wright told officers the safe was hers (¶ 17) and that she had saved the money inside it from her salary and a $20,000.00 retirement withdrawal.

The currency seized from both residences was packaged in folded rubber-banded bundles of $1,000.00 in U.S. currency, primarily in small denominations. The proportion of the bill denominations in the two sets of currency was nearly identical (i.e., they had very similar percentages of one hundred, fifty, twenty, ten, five, and one dollar bills). No police canine "sniff" was conducted on the safe at the Golf Club residence. Rather, the seized currency from both residences was transported to the police station and hidden in separate locations in a row of lockers. A trained police canine "Kilo" and his handler, WCDTF Deputy Lewis,

then conducted a drug "sniff." Kilo positively and separately alerted at both locations where the seized currency was hidden (doc. no. 46-5 at ¶¶ 9-10).

Sweet subsequently pleaded guilty and was convicted in 2011 of felony "Trafficking in Marijuana." Sweet's other drug-related criminal convictions include felony "Trafficking in Marijuana" (2003), misdemeanor "Attempted Trafficking in Marijuana" (2003), misdemeanor "Attempted Possession of Drugs" (2009), felony "Possession of Marijuana" (2011), and felony "Possession of Weapons While Under Disability" (2011).

On June 21, 2010, the United States filed this "in rem" action seeking civil forfeiture of the Golf Club currency ($220,200.00) pursuant 21 U.S.C. § 881(a)(6). The currency seized from Phillip Sweet's Deer Meadow residence ($152,750.00) is the subject of a separate forfeiture proceeding in state court and is not at issue here. With respect to the Golf Club currency, the United States served notice (doc. no. 6), and on August 3, 2010, Sweet's mother filed a claim to the Golf Club currency, alleging that such currency was saved by her from legitimate sources and is not "proceeds" of her son's illegal drug-trafficking.

The United States has moved for summary judgment, relying on evidence including photographs of the drugs and bundled currency, declarations by three law enforcement officers (Detective Dan Schweitzer, Lieutenant Steve Arrasmith, and Deputy Brian Lewis), an analysis by Ms. Brooke Whittaker, CPA, of the claimant's bank records from 2004-2009, the claimant's discovery responses, and the deposition testimony of Phillip Sweet, his younger half-brother (Isaiah Gales),


his aunt (Yvonne Lindsay), his mother (Sharon Sweet-Wright), and his sister (Kristen Sweet) (doc. no. 46).

The claimant opposes the motion for summary judgment. For evidence, she has submitted her own affidavit, copies of income tax returns from 1995-2009 for her and/or her husband, and Exhibits A-C (compilations of information derived from tax returns and bank records). Some of the tax returns are for the claimant individually, some are for her husband Ronald Wright individually (although he is not a claimant), and several are joint returns.[1] The claimant has submitted a list of cash withdrawals from her bank accounts in support of her allegation that this was the source of the currency found in the safe at her residence (doc. no. 49). In reply, the United States submitted the declaration of Ms. Brooke Whittaker, CPA, further explaining the scope and conclusions of her analysis of the claimant's bank records and expenditures (doc. no. 51-1 at 1-7). This matter is fully briefed and ripe for consideration.

**II. Issues Presented**

For purposes of summary judgment, the Court must determine whether any genuine disputes of material fact exist as to whether the seized currency is "proceeds" of drug trafficking, and thus, subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6). Claimant Sweet-Wright contends that the currency seized from the safe at the Golf Club residence is not "proceeds" of her son's drug trafficking and that she "saved" this large amount of currency from legitimate sources.

---

[1] The claimant omitted her tax return for 2003. Some of the submitted returns are missing pages.

III.  Standard of Review

Rule 56(a) of the Federal Rules of Civil provides in relevant part:

> A party may move for summary judgment, identifying each claim or defense or the part of each claim or defense on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

Under Rule 56, the moving party bears the burden of proving that no genuine dispute of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (l986). The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. Id. at 587. In doing so, the United States Supreme Court has explained that courts must distinguish between evidence of disputed material facts and mere "disputed matters of professional judgment," i.e. disagreement as to legal implications of those facts. Beard v. Banks, 548 U.S. 521, 529 30 (2006).

The district court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). On summary judgment review, the court's role is not to "weigh the evidence and determine the truth of the matter," but rather, to determine whether there are any genuine disputes of material fact for trial. Id. at 249. The United States Supreme Court has explained that a "genuine dispute" exists "only when there is sufficient evidence on which the jury could reasonably find for the plaintiff." Id. at 252. The main purpose of the summary judgment rule

is "to isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 377, 323 33 (1986).

IV. Relevant Law

The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 21 U.S.C.A. § 881 et. seq., provides in relevant part that:

> The following shall be subject to forfeiture to the United States and no property right shall exist in them:
>
> . . . . .
>
> (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

21 U.S.C.A. § 881(a). Under CAFRA, the burden of proof is on the United States to establish, by a preponderance of the evidence, that the seized property is "proceeds" subject to forfeiture. 18 U.S.C. § 983(c)(1). "[I]f the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3).

Absent any genuine disputes of material fact, summary judgment is appropriate in civil forfeiture actions. See, e.g., United States v. $174,206.00 in U.S. Currency, 320 F.3d 658, 662 (6th Cir. 2003) (affirming summary judgment for the United States in civil forfeiture case); United States v. $110,873.00 in U.S.

7

<u>Currency</u>, 2005 WL 3271312, *3 (6th Cir. (Ohio)) (same); <u>United States v. $181,087.14 in U.S. Currency</u>, 2002 WL 31951270, *3-4 (S.D. Ohio) (same).

<u>V. Discussion</u>

In forfeiture actions under 21 U.S.C. § 881(a)(6), the United States may satisfy its burden of showing that seized currency is "proceeds" of drug trafficking by presenting evidence, such as an unusually large amount of currency packaged in a suspicious manner the presence of drugs and "tools of the trade," inadequate legitimate sources of income to explain the large quantity of cash, and a positive drug alert on the currency by a trained police canine. See, e.g., <u>$110,873.00 in U.S. Currency</u>, 159 Fed. Appx. at 652. Common "tools of the trade" include firearms, digital scales, baggies, cutting equipment, and other drug-related paraphernalia. <u>Id</u>.

In the present case, the United States points to <u>all</u> of these types of evidence with respect to Phillip Sweet and his Deer Meadow residence. Phillip Sweet is a convicted drug trafficker, and officers found a large amount of suspiciously-concealed cash, illegal drugs, weapons, and other tools of the trade in the search of his Deer Meadow residence. Philip Sweet lacked sufficient legitimate sources of income to explain the large amount of currency found there, and a trained police canine later alerted on the currency in a drug sniff performed at the police station. These facts are undisputed. Of course, the currency seized from the Deer Meadow residence is not at issue here.

Because an unusually large amount of currency was also found in the search of his mother's Golf Club residence, the United States asks the Court to

draw the inference that such currency is also proceeds of Phillip Sweet's drug-trafficking. The Court notes that at the summary judgment stage, any reasonable inferences must be drawn in favor of the nonmoving party to the extent supportable by the record. Scott v. Harris, 550 U.S. 372, 381 (2007); Jakubowski v. Christ Hosp., Inc., 627 F.3d 195, 200 (6th Cir. 2010) (reiterating that district courts must view the evidence in the light most favorable to the nonmoving party.).

Unlike the search of the Deer Meadow residence, officers found no drugs, weapons, or other tools of the trade at the Golf Club residence. A canine sniff was not performed on the safe at the Golf Club premises. The claimant has produced evidence indicating that she has sizable legitimate sources of income that could explain the large quantity of currency in the safe at her residence. To support her assertion that the cash in the safe was her own personal savings, plaintiff has filed her own affidavit, copies of income tax returns for herself and/or her husband from the years 1995-2002, 2004-2009, and Exhibits A-C, which are compilations of numbers derived largely from information in those tax returns and her bank records. In her affidavit, claimant indicates that Exhibits A-C reflect her and her husband's income, their retirement withdrawals since 1995, and checks allegedly received by claimant after refinancing a house (doc. no. 49-1). Plaintiff points out that her salary from Cincinnati Bell was as high as $92,000.00 in some years and that their joint income was as high as $142,000.00 in some years (although her husband retired in 2008).

The United States argues that plaintiff's assertion that she saved the money in the safe is not "plausible" because a CPA's analysis of plaintiff's bank

9

records from 2004-2009 essentially reflects that plaintiff was a spender, not a saver. The United States points to evidence showing that plaintiff regularly outspent her income and had bounced over 200 checks in recent years. The United States asserts that it is not "plausible" that plaintiff would have saved such a large amount of cash ($220,200.00), given her spending habits. While the Court must consider the evidence as a whole in determining whether United States has met its burden of showing that the currency is "proceeds" subject to forfeiture, see <u>United States v. $99,990.00 in U.S. Currency</u>, 69 Fed.Appx. 757, 763 (6th Cir. 2003), the Court must refrain from "weighing" evidence or making "credibility" determinations on summary judgment review. The analysis here is confined to whether any genuine disputes of material fact exist for trial.

The United States essentially argues that although it was possible for plaintiff to have accumulated this money, it is unlikely given her spending habits. The United States argues that the more likely explanation is that the money was proceeds of drug trafficking hidden in the safe by her son Phillip. Again, on summary judgment review, the Court's role is not to weigh the evidence or make credibility determinations. On summary judgment review, the inquiry focuses on whether there is a failure of proof concerning an essential element of the case. <u>Anderson</u>, 477 U.S. at 249. The claimant has pointed to evidence indicating that her salary was large enough for her to have accumulated the amount of money seized from the safe, and thus, there is not a complete "failure of proof" on this issue.

**The case law confirms that evidence of a claimant's legitimate income is "material." Research reflects numerous forfeiture cases granting summary judgment where the claimant's income was relatively small and the amount of seized currency was relatively large, thereby objectively indicating that it would have been impossible for those claimants to have accumulated the seized currency from their legitimate income. See e.g., <u>United States v. $181,087.14 in U.S. Currency</u>, 2002 WL 31951270 (S.D.Ohio) (granting summary judgment where a drug-trafficker's parents had reported annual income of less than $12,000.00 but claimed they owned $181,087.14 in certificates of deposit purchased within the last three years); <u>United States v. $433,980 in U.S. Currency</u>, 473 F.Supp.2d 685, 691-92 (E.D.N.C. 2007) (granting summary judgment where claimant alleged he had saved the $433,980 in seized currency while employed as a limousine driver, but failed to produce any evidence that he actually obtained the money that way); <u>United States v. Funds From Prudential Securities</u>, 362 F.Supp.2d 75, 81 (D.D.C. 2005) (granting summary judgment where the seized funds far exceeded the claimant's legitimate income shown by her tax records).**

**Unlike these cited cases, the present claimant's evidence suggests that it <u>was</u> objectively possible for her to have saved the money in the safe, as she alleges. The United States has not pointed to any cases granting summary judgment where the evidence suggested that a claimant's income was large enough to explain the quantity of cash on hand. Additional research has not revealed any such cases. The claimant has provided factual evidence to support her allegation that the currency seized from the safe in her home was derived**

from her legitimate income. Viewing the evidence in the nonmovant's favor for purposes of summary judgment, the Court finds that a genuine dispute of material fact exists as to whether the seized currency is "proceeds" subject to forfeiture. The claimant has put forth evidence indicating that it was possible for her to have saved the money at issue; whether she actually did so is for the jury to decide.

One further procedural point merits some discussion. At the hearing, the United States challenged the claimant's reliance on the tax returns and correctly pointed out that the documents attached to the claimant's response are <u>unsigned copies</u> that have not been verified or otherwise authenticated. The claimant's affidavit does not verify the tax returns; the affidavit merely refers to three exhibits which are compilations of information allegedly gleaned from those unsigned tax returns. The United States asserts that the claimant's argument regarding evidence of her income is therefore unsupported by admissible evidence.

Generally, courts consider only admissible evidence when ruling on a motion for summary judgment. <u>Wiley v. United States</u>, 20 F.3d 222, 226 (6th Cir. 1994); <u>Tranter v. Orick</u>, 2012 WL 386363 (6th Cir. (Ohio)); <u>Alpert v. United States</u>, 481 F.3d 404, 409 (6th Cir. 2007) ("[E]vidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded."). With this general rule in mind, the United States Supreme Court has explained that on summary judgment, a party need not produce the evidence in a form that would be admissible at trial. <u>Celotex Corp</u>.., 477 U.S. at 324. In other

**12**

words, at the summary judgment stage, the proffered evidence need not be in admissible form, but its content must be admissible. <u>Bailey v. Floyd County Bd. of Educ</u>., 106 F.3d 135, 145 (6th Cir. 1997). "[T]he party opposing summary judgment must show that she can make good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary." <u>Alexander v. CareSource</u>, 576 F.3d 551, 558 (6th Cir. 2009). While plaintiff's proffered tax returns are unsigned, the content of plaintiff's tax returns (i.e. evidence of her legitimate income) would be admissible at trial if properly verified and authenticated.

In conclusion, although it is a close issue, the Court finds that genuine disputes of material fact preclude summary judgment in this case.

Accordingly, the "Motion for Summary Judgment" (doc. no. 46) by the United States is <u>DENIED</u>; this case shall proceed as scheduled.

IT IS SO ORDERED.

          <u>s/Herman J. Weber</u>
          **Herman J. Weber, Senior Judge**
          **United States District Court**