UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
CIVIL ACTION NO. 10-404-JGW

UNITED STATES OF AMERICA                                             PLAINTIFF

v.

$220,200 IN UNITED STATES CURRENCY                         DEFENDANT

and

SHARON WRIGHT                                                                  CLAIMANT

### ORDER

Before the Court are several motions: the government's motion in limine (Doc. 69), to which claimant filed a response (Doc. 82); claimant's motion to dismiss (Doc. 72), with plaintiff's response (Doc. 79); and claimant's motion for leave to file an amended pleading (Doc. 77) and petition for a hearing to determine whether forfeiture is constitutionally excessive (Doc. 75), to which plaintiff filed a response (Doc. 80).  With the case set for trial beginning April 18, 2013, the Court set an expedited briefing schedule (Doc. 74), and the motions are now ripe for decision.

### I.  Facts and Procedural Posture

The facts of this case have been described in great depth by Judge Weber in his order denying plaintiff's motion for summary judgment (Doc. 58), so only a truncated version is necessary here.  In 2009, the Warren County Drug Task Force ("WCDTF") and the DEA conducted a drug trafficking investigation into claimant's son, Phillip Sweet.  After conducting several controlled purchases with Sweet, the authorities performed a search of his home, finding several pounds of marijuana, guns, drug dealing instruments, and a safe containing $152,750.00

in cash. Based on certain connections Sweet had with claimant's home address, the authorities performed a lawful search of claimant's home, which revealed a safe containing defendant $220,200.00 in currency. Plaintiff filed suit under 28 U.S.C. § 881(a)(6), seeking forfeiture of the defendant money as proceeds of Sweet's drug trafficking violations or money traceable to proceeds of such drug trafficking. Following discovery, the government moved for summary judgment. Doc. 46. Judge Weber denied the motion, finding that claimant showed it was objectively possible that, as claimant argues, she saved the money in the safe from legitimate sources. Doc. 58. The parties consented to this Court's jurisdiction (Doc. 60) and the matter was set for trial (Doc. 61). Following the final pretrial conference (Doc. 70), the parties filed the pending motions, which will be analyzed in turn.

## II.  Claimant's Constitutional Motion and Motion to Amend

On April 9, 2013, claimant filed what she titled, "Petition of Claimant Pursuant to 18 U.S.C. § 983(g) that Forfeiture of the Defendant is Constitutionally Excessive," (hereinafter "the Constitutional Motion"). Doc. 75. Claimant seeks an order from this Court, following a hearing, "that forfeiture of the Defendant currency is grossly disproportionate to the offense and that the Court eliminate [or reduce] the forfeiture as necessary to avoid a violation of the Excessive Fines Clause of the Eighth Amendment of the Constitution." *Id*. at 7.

### a.  Legal Framework

#### 1.  Supplemental Rule G(8)(e)

While 18 U.S.C. § 983(g) permits a claimant to petition a court to determine whether a forfeiture is constitutionally excessive, it is Rule G(8)(e) of the Federal Rules of Civil Procedure's Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions

("Supplemental Rules") that determines the procedure for such mitigation petitions. *See* Committee Notes to Rule G. Supplemental Rule G(8)(e) states, "[a] claimant may seek to mitigate a forfeiture under the Excessive Fines Clause of the Eighth Amendment by motion for summary judgment or by motion made after entry of a forfeiture judgment if: (i) the claimant has pleaded the defense under Rule 8 [of the Federal Rules of Civil Procedure] and (ii) the parties have had the opportunity to conduct civil discovery on the defense."

On April 10, 2013, claimant filed a motion for leave to file an amended pleading under Rule 15(a) or (b) of the Federal Rules of Civil Procedure, attaching a proffered second amended answer. Doc. 77. Claimant did so in order to perfect the Constitutional Motion procedurally, as the attached answer contained the affirmative defense of excessiveness.

## 2. Rule 15(a) and (b)

Under Rule 15(a), "a party may amend its pleading once as a matter of course." Fed. R. Civ. P. 15(a). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." *Id*. The Sixth Circuit has held that in weighing a motion to amend,

> [u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001). Nonetheless, "[w]hen amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Id*. at 459 (citation omitted). "Although Rule 15(a) indicates that leave to amend shall be freely granted, a party must act with due diligence if it

3

intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension and Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995). This Court has wide authority in this area, which is exemplified by the abuse of discretion standard under which the Sixth Circuit reviews such decisions. *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000).

Claimant also raises Rule 15(b)(2) as permitting amendment. Rule 15(b)(2) states, "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue."

### b. Analysis

To support her request for amendment under Rule 15(a), claimant invokes several of the stated factors. She asserts that the government will not be prejudiced by amendment because no additional discovery would be required; that no undue delay is present because the constitutional issue precipitating the amendment will not be addressed until after trial; and that amendment would not be futile because claimant believes she will prevail on the merits of the Constitutional Motion. Doc. 77 at 3. Alternatively, claimant argues that Rule 15(b) applies, because plaintiff will try to connect defendant currency to claimant's son's drug trafficking, which will lead to claimant's argument that the attempted forfeiture is disproportionate to that offense, which claimant maintains amounts to consent. *Id*. at 4.

In addition to arguing that its motion for leave should be granted, claimant asks that its Constitutional Motion be held in abeyance until a judgment forfeiting the money is entered, if it is. *Id*. at 4. In a footnote to her motion for leave to amend, claimant states that her counsel "has

4

spoken with the U.S. Attorney's Office and the parties agree that Claimant's Petition filed April 9, 2013 should be held in abeyance under the Supplemental Rules." *Id*.

The government's response tells a somewhat different story. Doc. 80. Plaintiff claims that it spoke with claimant's counsel to inform them that the Constitutional Motion is premature and informally attempt to procure her voluntarily withdrawal of the motion. *Id*. at 1. Rather than agreeing that the motion should be held in abeyance, plaintiff argues that it should be denied, for any one of three reasons, all pertaining to Supplemental Rule G(8)(e). First, plaintiff maintains it is premature, as it was not made in a motion for summary judgment nor after entry of a forfeiture judgment. *Id*. at 3. Second, plaintiff argues claimant waived the issue by failing to plead it as an affirmative defense. *Id*. at 2. Plaintiff submits that claimant filed both an original answer and an amended answer, which "provided Claimant every opportunity to plead any and all desired affirmative defenses. Having had that opportunity, Claimant should not be permitted to now raise an entirely new affirmative defense over two years into this litigation and only eight days before trial." *Id*. Third, plaintiff argues that the Constitutional Motion should be denied because the government has not had the opportunity to conduct discovery on the issue of excessiveness. *Id*. at 3.

Relatedly, the government also argues that claimant's motion for leave to file an amended pleading or answer should be denied, which would also result in denial of her Constitutional Motion. Doc. 80 at 4. Plaintiff argues that "Claimant has not attempted to explain why she failed to raise this defense until eight days before trial." *Id*. The government emphasizes that its stated inability to conduct discovery on this issue amounts to prejudice that warrants denial of the motion to amend. *Id*. at 3.

5

The Court agrees with plaintiff. First, claimant's argument under Rule 15(b) is unavailing. The fact that plaintiff will attempt to prove its case does not mean it has consented to claimant presenting evidence that the forfeiture is excessive, as claimant appears to argue. More importantly, claimant's argument under Rule 15(a) is unpersuasive. Claimant has clearly committed an undue delay in moving to amend its answer and raising the excessiveness issue only eight days before trial. *See Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) ("At least one Sixth Circuit decision has held that allowing amendment after the close of discovery creates significant prejudice, and other Circuits agree."). Such delay is magnified because claimant already filed an amended answer, yet failed to plead this affirmative defense at that time. Critically, the government would be greatly prejudiced if forced to scramble to address this issue so late in the now two-plus year proceedings. This is particularly so because plaintiff has not had the chance to conduct discovery on this issue, which is explicitly required by Supplemental Rule G(8)(e). As a result, claimant's motion for leave to file an amended answer will be denied. Because claimant has not affirmatively pleaded the defense and because plaintiff has not had the opportunity to conduct discovery on it as required by Supplemental Rule G(8)(e), the Petition of Claimant Pursuant to 18 U.S.C. § 983(g) that Forfeiture of the Defendant is Constitutionally Excessive will also be denied.

### III.  Claimant's Motion to Dismiss

On April 5, 2013, claimant filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 72. Claimant argues that the doctrine of collateral estoppel precludes prosecution of this case. Claimant maintains that collateral estoppel applies because the Hamilton County Prosecutors office previously litigated a civil forfeiture case in the

Hamilton County Court of Common Pleas against the money seized at Sweet's residence, wherein the state court jury determined that Sweet must forfeit to the state $48,880.00 of the $152,750.00 which the state authorities sought to seize. *Id*. at 6.  Claimant asserts that the elements for collateral estoppel are present: the state court case directly litigated and determined the issue of the extent of Sweet's drug trafficking proceeds; the Hamilton County Court of Common Pleas is a court of competent jurisdiction; and the parties in both suits are in privity. *Id*. at 7-12.

The government opposes claimant's motion to dismiss on both procedural and substantive grounds.  Procedurally, plaintiff argues that claimant's motion is grossly untimely under both the Federal Rules of Civil Procedure and this Court's Scheduling Order.  Doc. 79 at 7.  Rule 12(b), which claimant invokes, states, "[a] motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."  In addition, Supplemental Rule G(5)(b) explicitly provides that, "[a] claimant must serve and file . . . a motion under Rule 12 within 21 days after filing the claim."  Finally, Judge Weber's scheduling order stated, "[a]ll dispositive Pretrial Motions shall be filed by April 16, 2012."  Doc. 10 at 1.

Plaintiff filed its complaint on June 21, 2010.  Doc. 1.  Claimant filed her claim on August 3, 2010 (Doc. 5), and her answer on August 23, 2010 (Doc. 7).  Claimant's motion in April 2013 is therefore considerably late.  The Court recognizes that the Hamilton County trial upon which claimant bases her motion only concluded in late March 2013.  Nonetheless, plaintiff argues, and the Court agrees, that claimant's chosen procedural vehicle for pursuing a collateral estoppel defense - the 12(b)(6) motion - was untimely.  Doc. 79 at 8.  Therefore,

7

claimant's motion to dismiss will be denied.[1]

## IV. Plaintiff's Motion in Limine

On April 4, 2013, plaintiff filed a motion in limine. Doc. 69. The motion seeks an order holding that evidence and testimony regarding a canine drug sniff of the defendant currency is admissible. Claimant opposes the motion, arguing that the evidence should be excluded under Rule 403 of the Federal Rules of Evidence. Doc. 82.

### a. Factual Background

On January 5, 2010, following the search of claimant's home and seizure of the defendant currency the day before, Detective Schweitzer of the WCDTF requested that Deputy Lewis and his canine partner, Kilo, of the Warren County Sheriff's Department conduct a drug sniff of the defendant currency, which was being housed at the WCDTF garage. Doc. 46-5. In a declaration filed with plaintiff's motion for summary judgment, Deputy Lewis explained how the drug sniff was conducted. *Id*. Lewis states that he had Detective Schweitzer put the money into two separate boxes and then place one box into a row of lockers and the other on a series of bookshelves. *Id*. at ¶ 8. Lewis alleges he did not know in which locker or on which bookshelf Schweitzer placed the boxes. *Id*. Lewis then brought Kilo into the garage and commanded him to sniff narcotic odor, taking him to the area of the lockers. "I let Kilo do a 'free sniff,'" Lewis states, "which is where you just let the canine work at his own pace and let him go where he

---

[1] Claimant's motion is also be denied for the substantive reasons plaintiff discusses in its responsive brief. Doc. 79 at 8-12. Plaintiff was not a party to the state court action and claimant has not made a showing of privity between the Federal Government and the State of Ohio. *See U.S. v. Dominguez*, 359 F.3d 839, 845 (6th Cir. 2004). In addition, the money sought to be forfeited in this case is different from that in the state case. *See U.S. v. Cinemark USA, Inc.*, 348 F.3d 569, 583 (6th Cir. 2003). Therefore, the issue in this case was not in fact litigated in the state case.

wants." *Id*. During the free sniff, Lewis maintains he noticed Kilo "had a head turn and slowed as he passed a certain locker, but he kept going." *Id*.

Lewis then instructed Kilo to perform a "'detail sniff' which is where you work the canine slower and you direct him where you want him to sniff." *Id*. at ¶ 9. Lewis used his hand to instruct Kilo to sniff the bottom of the lockers, and as they proceeded down the row of lockers, "Kilo stopped at a locker, [laid] down and was scratching at it. [Lewis] continued to walk down the row of lockers, but Kilo would not leave the locker that he was at. This was a positive indication for narcotics odor," Lewis declares. *Id*. Lewis asked if it was the locker containing the defendant currency and Schweitzer confirmed that it was. *Id*. Lewis then performed the same procedure on the rows of shelving, relating that "when Kilo got to the shelf where the other box of money was at he started scratching at the box with the money. Kilo scratched the box and knocked it off the shelf onto the floor. This," Lewis states, "was a positive indication for narcotics odor." *Id*. Lewis submits that Kilo made no other indications, even though one of the lockers he passed contained various canine distractors, such as rubber balls, tubes, toys, cat food, and a garbage bag full of shredded money used as a training aid for another dog. *Id*. at ¶ 10.

Claimant asserts that during Deputy Lewis' deposition he stated that Kilo used a universal indicator, rather than alerting differently to different types of narcotics; that he agreed that a person could obtain contaminated currency through a common transaction; and that he was aware of research regarding the unreliability of dog sniffs. Doc. 82 at 2.[2]

### b. Legal Framework

---

[2]The deposition transcript has not been submitted.

Rule 403 states, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  The Court has "very broad" discretion in balancing the probative value of evidence against the risk of unfair prejudice.  *U.S. v. Dietz*, 577 F.3d 672, 689 (6th Cir. 2009).  Claimant asserts that the dog sniff evidence's probative value is significantly outweighed by the risk that it will be unfairly prejudicial.

### c.  Analysis

Claimant argues that the dog sniff evidence is unreliable due to widespread contamination of currency and thus of minimal probative value, citing several cases from various courts in support.  Doc. 82 at 3.  Reliability is further eroded in this specific case, claimant asserts, because the drug canine was not trained in currency sniffs, and therefore does not possess the sophistication to differentiate between contaminated and uncontaminated currency.  *Id*. at 8.  Claimant also cites authority for the proposition that the reliability of a dog sniff is diminished when it took place at a law enforcement facility where drugs are often stored, rather than in the field.  *Id*. at 3; *U.S. v. Akins*, 995 F. Supp. 797, 814 (M.D. Tenn. 1998).  Finally, claimant maintains that the "negative connotation associated with drugs will unfairly prejudice Claimant considering Claimant has no criminal history and no narcotics, contraband or drug paraphernalia were found within . . . her home where the currency was seized.  Using inherently unreliable evidence to establish the only physical connection between Claimant and drugs is unfairly prejudicial."  *Id*. at 4.

In opposition, plaintiff cites substantial authority confirming the reliability and probative

10

value of dog sniff evidence. Doc. 69 at 5-7. Plaintiff argues that claimant's contamination argument has been debunked and that courts, including the Sixth Circuit, regularly accept such evidence as reliable. *Id*. Plaintiff also submits that Deputy Lewis and Kilo's extensive training and credentials bolster the reliability of the dog sniff evidence. *Id*. at 7.

### c. Analysis

Claimant raises not insignificant objections to the dog sniff evidence. Nevertheless, the Court disagrees with her contamination argument. Claimant has cited no binding authority for her contention and the Court finds a growing consensus of other authorities deeming the argument unpersuasive, including the Sixth Circuit. *See U.S. v. Terry*, 522 F.3d 645, fn. 5 (6th Cir. 2008) (stating "[m]ore recent case law has called this assumption [(that the vast majority of money is contaminated)] into question"). Moreover, that the sniff took place at the WCDTF's garage may cut either way, considering the distractors that were present. Finally, whether the canine is clearly trained and certified to conduct the sniff at issue is a matter for cross examination. In short, the probative value of the dog sniff evidence, which attempts to connect the defendant currency to Sweet's drug trafficking - the ultimate issue in the case - is not outweighed by the risk that the evidence is unfairly prejudicial to claimant. Claimant's recourse in this instance is not through Rule 403, but by deploying her stated arguments before the jury to undermine the dog sniff evidence. Therefore, plaintiff's motion in limine will be granted.

### V. Conclusion

For the reasons stated herein, accordingly,

**IT IS ORDERED:**

(1) Plaintiff's motion in limine [Doc. 69] is **GRANTED**;

11

(2) Claimant's motion to dismiss [Doc. 72] is **DENIED**;

(3) Claimant's motion for leave to file an amended pleading [Doc. 77] is **DENIED**; and

(4) Claimant's petition for a hearing to determine whether forfeiture is constitutionally excessive [Doc. 75] is **DENIED**.

This, the 17th day of April, 2013.    s/ J. Gregory Wehrman
　　　　　　　　　　　　　　　　　　　　　　　　J. Gregory Wehrman
　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge